WALSH, *Appellant*, v. ST. LOUIS EXPOSITION AND MUSIC HALL ASSOCIATION.

1. **Practice in Supreme Court:** WAIVER OF OBJECTION. Where one sues for damages for breach of contract, it is too late to raise the objection for the first time in the supreme court that the defendant by its plea of plaintiff's waiver and abandonment of the contract admitted that a right of action had accrued thereon to plaintiff.

2. **Evidence.** Letters relevant and material to the issues of the case are properly admitted in evidence.

3. **Contract, Action on:** REVIEW OF EVIDENCE. The plaintiff sued defendant for breach of contract in failing to employ him as superintendent and architect of a building erected by it; *held* on a review of the evidence, *first,* that it failed to show as an essential element of plaintiff's case that the award of greatest merit was given to his plans; *second,* that there was evidence tending to support defendant's plea of plaintiff's waiver and abandonment of his contract.

4. **Tender:** WAIVER OF MONEY. The actual production of the money may be waived in a tender.

5. **Practice in Supreme Court:** JUDGMENT FOR RIGHT PARTY. Where the plaintiff fails to make out a case and the judgment is for the right party, it will be affirmed regardless of objections to the instructions.

*Appeal from St. Louis City Circuit Court.*—HON. G. W. LUBKE, Judge.

AFFIRMED.

*W. E. Fisse* and *Alexander Martin* for appellant.

(1) The only substantial defense pleaded is "that after plaintiff submitted his plans, designs, etc., to defendant, plaintiff, with the assent of defendant, waived and abandoned any claim or right of plaintiff to become the architect and superintendent of said building, under or by virtue of the terms of the resolutions aforesaid." Waiver and abandonment are questions of intention, and are to be determined from a consideration of all the facts and circumstances surrounding the transaction. *Ehrlich v. Ins. Co.,* 88 Mo. 249 ; *Chouteau v. Iron Works,* 88 Mo. 73; 94 Mo. 388 ; *Boynton v. Bradley,* 54 Vt. 92 ; *West v. Platt,* 127 Mass. 367 ; Thompson on Trials, sec. 1440. The offer of guaranty about the cost of the building was not intended by Mr. Walsh as a waiver of his right to have his plans declared the most meritorious designs in the contest, and it was

not received or regarded by the board in the light of a waiver or abandonment. (2) There was no evidence to show such waiver at a period before defendant had voted on the comparative merits of the plans presented. (3) There was no waiver or abandonment by the plaintiff of his rights' under the resolutions, after his plans had been in fact declared the most meritorious of all those submitted in the competition, and he had been selected as architect. (4) Instruction number 6, asked by plaintiff and refused, was a proper instruction, and should have been given. *Boland v. Railroad*, 36 Mo. 484, and other cases cited in argument, *infra*. (5) The court committed error in admitting the testimony offered by defendant, and respecting the tender of five hundred dollars to the plaintiff. The letter was hearsay ; the testimony was irrelevant ; and the tender was insufficient. *Berthold v. Reyburn*, 37 Mo. 586. (6) The court gave improper instructions asked by defendant. The instruction numbered 3, asked by plaintiff and modified by the court, should have been given as requested. *Chouteau v. Iron Works*, 83 Mo. 73. (7) The instructions given by the court concerning the elements constituting waiver and abandonment, viz., number 3 for plaintiff and number 10 for defendant, put this proposition to the jury less strongly than plaintiff was entitled to have it stated ; and this weakness of statement, when contrasted with the positive language used in defendant's other instructions, respecting particular acts alleged by defendant to constitute a waiver, made the charge altogether one-sided, unfair and highly prejudicial to the plaintiff. (8) Instructions numbered 5 and 8, asked by plaintiff, should have been given. The plaintiff was entitled to have the contract of employment construed by the court. *Chouteau v. Iron Works*, 83 Mo. 73. The construction of the contract as contained in these instructions was evidently proper.

*Boyle, Adams & McKeighan* and *Silas B. Jones* for respondent.

(1) None of the propositions submitted by appellant in his behalf in his brief can be maintained. Appellant's plans were never declared the most meritorious. (2) The judgment should not be reversed on account of any alleged errors in the instructions. *First.* If under the evidence the judgment is for the right party, it will not be disturbed by this court for any errors, which may have occurred at the trial. *Noble v. Blount,* 77 Mo. 235; *Galbreath v. Moberly,* 80 Mo. 484; *Methudy v. Ross,* 81 Mo. 482. *Second.* Instructions given to the jury are to be taken and read together; and even if the instructions given are faulty the case will not be reversed, unless it is clear that the jury was misled. *Owens v. Railroad,* 95 Mo. 181; *McCarthy v. Railroad,* 92 Mo. 536. *Third.* The appellant cannot complain of error in the instructions given at the request of respondent, if the same error occurs in those given to the jury at the request of appellant. *McGonigle v. Daugherty,* 71 Mo. 259; *Thorpe v. Railroad,* 89 Mo. 650 (666); *Holmes v. Braidwood,* 82 Mo. 610. *Fourth.* While the trial issues must be within the paper issues, they may be less. *Hornblower v. Crandall,* 7 Mo. App. 220; s. c., 78 Mo. 581. *Fifth.* The construction of a written instrument is a matter of law for the court, and must not be left to the jury as a question of fact. *State v. Lafaivre,* 53 Mo. 470; *Edwards v. Smith,* 63 Mo. 119; *Fruin v. Railroad,* 89 Mo. 397. *Sixth.* When the facts are undisputed or clear, the court should apply the law and determine the case. *Powell v. Powell,* 23 Mo. App. 365. *Seventh.* When an act is relied upon to show an abandonment by one party to a contract, it is proper for the court to declare whether such act constitutes an abandonment. *Chouteau v. Iron Works,* 83 Mo. 73. *Eighth.* An

instruction is not objectionable because it tells the jury that the effect of a fact established in the evidence is not what is claimed for it. *Chouteau v. Iron Works*, 83 Mo. 73. (3) The letters complained of were properly admitted in evidence ; their improper admission could not have prejudiced plaintiff. (4) The contention of appellant that the tender of five hundred dollars by check was not good is, under the evidence, not well taken. *Berthold v. Reyburn*, 37 Mo. 586.

BLACK, J.—The defendant corporation, having in contemplation the erection of a building for exposition and music hall purposes, adopted, and on the nineteenth of April, 1883, sent to the plaintiff and to other architects, a copy of the following resolutions :

"*First.* That all architects, residents of this city, and five non-residents, be invited to prepare and submit designs.

"*Second.* That, from those presented by residents, seven, which shall be considered the most meritorious, shall be accepted and awarded five hundred dollars ($500) each, and the five presented by non-residents shall each be awarded the same amount. All designs for which you pay five hundred dollars ($500) shall be the property of the association.

"*Third.* That it be understood that any foreign architect may submit a design, but, if not accepted as the most meritorious of all, he will receive no compensation, and his design shall be returned.

"*Fourth.* The architect who is successful shall not receive the five hundred dollars ($500), but he shall be engaged as architect and superintendent, and shall be paid, for performing such duties, the usual commissions as adopted by the American Institute and the St. Louis Institute of Architects."

The fifth, sixth and seventh resolutions provide when the plans shall be delivered to the secretary ; that they shall be without names or marks to indicate by

whom made; and the scale to which they shall be drawn, with descriptive specifications.

The eighth is as follows: "The said designs and specifications shall be for a building to cost not over four hundred thousand dollars ($400,000) exclusive of power, electricity and elevator machinery, arrangements for which, however, must be made."

Others go on to recommend architects to include in their designs the following features: The building to cover not more than four hundred and eighty by three hundred and twenty feet, to have within it a music hall to seat four thousand persons, and a small hall to seat twelve hundred persons, and to have a basement, fine art rooms, a floral hall, etc.

Pursuant to these resolutions the plaintiff, a resident architect of St. Louis, submitted in the proposed competition two sets of plans, one called "Dignus Laudie A," and the other "Dignus Laudie B," and a number of other architects, both resident and non-resident, submitted one set of plans each. It is alleged in the petition, among other things, that defendant's board of directors gave to one of plaintiff's plans the award of highest merit, that he thereby became the successful architect within the meaning of said resolutions, so that defendant became bound to employ him as architect and superintendent at the specified compensation; but that defendant made breach of its agreement to the plaintiff's damage in the sum of twenty thousand dollars, and for which sum he prays judgment. These averments are denied, and the answer then states that, after plaintiff submitted his plans, he, with the consent of the defendant, waived and abandoned any claim or right to become the architect and superintendent of the building under and by virtue of said resolutions; all of which is denied by the reply. These issues were submitted to a jury, and were found for the defendant, and plaintiff appealed.

A contention made in this court by the plaintiff is that defendant, by its plea of waiver and abandonment,

admits that a right had accrued to him to become archi-
tect and superintendent of the building.  As to this it
is sufficient to say no such a question was raised in the
trial court.   The case was there tried on both issues of
fact, and that, too, without objection.   It is too late to
make the question for the first time in this court.

The plaintiff insists that the evidence is conclusive
to the effect that an award of greatest merit was given
to his plans, so that any contrary finding by the jury
should be set aside ; and that there is no evidence to
support the plea of waiver and abandonment.   As the
briefs devote much space to a discussion of these ques-
tions, it becomes necessary to set out a condensed
history of the case made by the evidence.

On the ninth of July, 1883, the defendant's board
of directors proceeded to select seven plans presented
by resident architects, entitled to the award of five hun-
dred dollars each.   This having been done the board
had before it nine plans from which to select the set of
greatest merit, seven furnished by resident and two
by non-resident architects.   The plaintiff's plans called
"Dignus Laudie A" were of the nine.   The directors
then employed two experts to meet with them and hear
the architects explain their respective plans.   At a
meeting held by the board on the next day, and while
plaintiff was explaining his plans, the question was
asked him if the building could be constructed as he
had designed it for four hundred thousand dollars, to
which he answered that he came prepared for the
inquiry.   He then presented to the board of directors a
bond signed by himself, whereby, in consideration that
the board appointed him architect and superintendent
of the building with the compensation specified in the
resolutions, he bound himself, in the sum of thirty
thousand dollars, that the building would not cost, if
erected under his plans, to exceed three hundred and
ninety-eight thousand dollars.

No particular notice seems to have been taken of this offer by the board of directors at that time. Other architects were heard; and, on the twelfth of the same month, a resolution was passed limiting the appropriation for the building to four hundred thousand dollars. On the nineteenth of July the board of directors reconsidered the resolutions of July 9, selecting seven plans furnished by resident architects entitled to the award of five hundred dollars each, and proceeded to make a new selection. From the seven then selected, and from those furnished by non-resident architects, the board selected five plans "from which *the* plan is to be selected." The plaintiff's plans called "Dignus Laudie A" were of the seven, and again of the five thus selected.

On the twentieth of July the board of directors adopted this resolution: "That we now go into the ballot for the favorite plan, considering only the five plans already selected. To drop the plan receiving the lowest vote, and then to vote upon the remaining, and so to continue until one of the five shall have been selected by a two-thirds vote; all, however, to be done with the understanding that the plan shall be so modified or changed as to suit the views of this board, and to cost not to exceed four hundred thousand dollars ($400,000), and, in case the plan selected cannot be made to suit the wishes and requirements of this board, it will be abandoned, and the other four plans again come before this board for action." Pursuant to this resolution a vote was taken which resulted in the selection of plaintiff's plans. The board of directors then passed a resolution appointing a committee to confer with the plaintiff and ask him to change his plans to conform to the wishes of the board. This committee was also directed to examine the amount and kind of security which the plaintiff proposed to give as a guaranty that the building would cost not more than four hundred thousand dollars.

The specifications presented with the plaintiff's plans were what are called descriptive specifications. They complied with the requirements of the resolutions inviting competition, but were not as full and complete as the board desired. The directors also desired music hall to be made some thirteen feet wider than plaintiff had designed it, and that the small hall be placed in a different part of the building. These two changes called for an additional expenditure of money. The plaintiff and his son, at several meetings of the board, presented modified plans and amended specifications which were duly considered. In the meantime negotiations were pending between the plaintiff and board of directors, looking to a contract whereby plaintiff was to be made architect and superintendent, he at the same time to give security that the building would cost not exceeding four hundred thousand dollars, or some specific amount.

On the eighth of August, the directors adopted the following resolution: "It was moved and seconded that the plans and specifications submitted by Mr. Thomas Walsh, architect, be selected as the best plans and specifications for the proposed exposition and music halls, and that he be selected as the architect of said building, to become so in fact when his amended plans and specifications submitted to-night, together with the contract and bond under which this building is be erected, are presented to and approved by this board.

"On motion, it was ordered that a committee consisting of the president, Mr. Franklin and Mr. Givens, experts, proceed at once to get plans and specifications perfected, and also that a bond from Mr. Walsh be obtained for presentation to this board for approval."

On the next day the defendant's secretary notified the board of public works of the city of St. Louis that plans and specifications were then ready to be submitted to that body for approval. In about ten days

that board made an order to the effect that the plans and specifications were approved in their general scope; but the order goes on to say that they were incomplete in details, and that completed plans should be thereafter submitted.

After much negotiation between the plaintiff and the defendant's directors, and the preparation of three or four proposed contracts, the parties supposed they had come to an understanding. The contract, however, was not consummated, each party claiming on the trial of this case that the other refused to sign it. On the sixteenth of August the plaintiff addressed a communication to the defendant from which it appears the directors had agreed to allow him four hundred and eleven thousand and fifteen dollars, as the cost of the building, whereas he demanded four hundred and twenty-five thousand dollars; and in which communication he said that, unless the concession could be made to him, he declined to enter into the proposed agreement. The directors thereupon passed a resolution to the effect that, as Thomas Walsh had declined to consummate his agreement in regard to the plans and specifications, "we do proceed to discuss other plans and specifications." On the next day the directors resolved to remit a check of five hundred dollars for each of the seven plans selected as the most meritorious of those presented by St. Louis architects.

The defendant read in evidence a letter from its president to plaintiff dated twentieth of August, 1883, wherein the president makes reference to the fact that defendant had, on a previous day, tendered plaintiff a check for five hundred dollars in payment of the premium under the second of the resolutions of the nineteenth of April, 1883, and he then goes on to renew the tender of a check for the above amount and concludes by saying, if plaintiff preferred, his plans would be returned in lieu of the check. This letter was supplemented by the evidence of the defendant's assistant secretary, who testified that he called upon plaintiff on two different

occasions; that on the first he tendered to plaintiff a check made by the defendant on its bank for five hundred dollars in payment of the premium; that plaintiff refused to accept the check; that on the other occasion he delivered to plaintiff the president's letter of the twentieth of August, just mentioned; and that plaintiff again refused to accept the check or receive his plans. To this letter of the defendant's president, the plaintiff answered on the next day, stating among other things, that his plans had been declared by the board of directors the most meritorious of all that were put in competition under the resolutions of the nineteenth of April, 1883, and that he claimed the premium of highest merit. To this the defendant's president replied, in substance, that the board of directors had never declared his plans the most meritorious of all: The plaintiff, being asked, on the trial of this case, this question: "Was any statement made to you as to the reason why they desired such bond or paper from you?" said: "Well, I could not say openly that they declared my plans to be the plans adopted; they did not tell me so."

So far as we are advised, the board of directors did not take any further action upon the other four plans, but employed Mr. Legg as architect and a Mr. Given as superintendent. Mr. Legg made new plans under the advice and directions of the directors, and the building was built according to them at a cost of six hundred thousand dollars. The plaintiff offered much evidence to the effect that the building as erected is the same as his design after he had widened music hall and changed the location of the small hall, save as to the style of the architecture in the principal elevations; that in all material respects the building erected is the same as the one designed by him. On the other hand, the defendant introduced evidence to the effect that the building is like several of the plans put in competition, and that it is more like the plans submitted by Mr. Jansen than those submitted by plaintiff; that plaintiff's plans were

locked up, and were not consulted by Mr. Legg; and that the new plans prepared by Mr. Legg were, in the end, approved by the board of public works of St. Louis.

When the defendant offered to read in evidence the letter of its president addressed to the plaintiff dated August 20, 1883, and before set out, the plaintiff objected on the ground of irrelevancy and immateriality. This letter is but a part of the evidence concerning the tender of five hundred dollars to the plaintiff. Taken in connection with the other evidence concerning the tender, it was both relevant and material. It makes proof tending to show that the defendant's directors had not given, and at that time did not intend to give, to plaintiff's plans the award of greatest merit under the resolutions inviting the competition between architects; for, by the second of those resolutions, he would not be entitled to the five hundred dollars, if his plans were declared the most meritorious of all. Again, by the terms of those resolutions, the defendant became the owner of the plans for which it paid the award of that amount, and, of course, became entitled to use all such plans. The defendant having a right to use the plaintiff's plans, the evidence offered by the plaintiff, concerning the similarity between his plans and the building as erected, becomes of little or no value to the plaintiff. The evidence to which the objection was made was, therefore, relevant and material on the issue as to whether the directors gave the plaintiff's plans the award of greatest merit, and was properly admitted. It matters not that it has no particular bearing upon the issues of waiver.

2. The next and the most important question in this case is, does the evidence show, as the plaintiff contends, conclusively that his plans were, by defendant's directors, declared the most meritorious of all that were placed in the competition?

There can be no fair claim made that the directors made any such award prior to the twentieth of July;

VOL. 101—35

but the plaintiff places much reliance upon the resolution adopted by the directors on that date. That resolution shows upon its face that the selection of the plaintiff's plans then made was conditional. It was made upon these conditions: *First*, that his plans be so modified as to suit the wishes of the directors; *second*, that the cost of the building would not exceed four hundred thousand dollars; *third*, if plaintiff's plans could not be made to suit the directors, then they were to be abandoned, and the other four come before the board for action. There is here no such an award as is contemplated by the resolutions inviting the competition. From the last-mentioned date on to the eighth of August the directors were engaged in considering plaintiff's modified plans and amended specifications, and in negotiating with him for security as to the cost of the structure. The resolution of the eighth of August does declare that the plaintiff's plans "be selected as the best plans and specifications * * * and that he be selected as the architect;" but it goes on to say, "to become so in fact when his amended plans and specifications submitted to-night, together with the contract and bond under which this building is to be erected, are presented to and approved by this board."

The contract mentioned in this resolution has reference to the contract then under negotiation, but not yet consummated, looking to the appointment of plaintiff as architect and superintendent in consideration that he gave security to be approved by the board that the building, erected in strict accordance with his plans, would cost not exceeding a designated amount. This resolution makes no present award of greatest merit to plaintiff. He is to become the architect of the building only when his amended plans and specifications and the contract and bond are presented to and approved by the board of directors. Here, again, there is no final

award of greatest merit.   This is too plain to admit of a contrary argument.

The letter of the defendant's secretary, addressed to the board of public works of St. Louis, if taken by itself, would indicate that plans had been selected, and the plans to which he refers in this communication must have been those prepared by the plaintiff.   But that letter must be read in the light of the resolution passed by the board of directors, and when this is done there is still nothing more than a conditional, and not a final, selection of the plaintiff's plans.

At this point we may look to the resolutions of the nineteenth of April inviting the competition, and determine their scope and meaning; for it is on them that plaintiff founds his cause of action.   By their terms it became the duty of the defendant's directors, after having determined what plans were entitled to the award of five hundred dollars each, to select the set deemed to be the most meritorious of all.   The author of this set became entitled to be employed as architect and superintendent at the specified compensation.   The resolutions limit the cost of the building to four hundred thousand dollars; and, in making the award of greatest merit, it was the duty of the directors to consider the cost as well as the appearance, convenience and durability of each proposed structure.   The directors were the judges of all of these matters, the one as much as the other.   The plans of greatest merit having been selected and the final award thus ascertained, the directors could make such changes as they saw fit and proper.   But the plans should have been considered for the final award as they were presented, and that, too, without calling upon any architect to give security as to the cost of the structure.   All this was due to the other architects who placed their plans in the competition.   The fact that the directors deviated from the line of their duty cannot aid the plaintiff in this suit, even if we lay aside the fact that plaintiff was himself a

party to that deviation. He founds his action on the allegation that the directors did give to his plans the award of greatest merit, and that, too, under and in accordance with the resolutions inviting the competition. He does not make out a case by showing that the directors deemed his plans the best, provided he gave security as to the cost of the building and modified them to suit the motions of the directors.

The resolutions of the twentieth of July and eighth of August do not show that an award of greatest merit was made to the plaintiff's plans under the provisions of the resolutions inviting the competition. They show affirmatively that no final award was made, either under those resolutions or on the basis of the new proposed contract calling for security as to the cost of the building. The other evidence showing a similarity between the building and the plaintiff's design, standing alone, would be of some value to the plaintiff; but it is much weakened, if not wholly overcome, by the other evidence showing a similarity between the building and several of the designs placed in competition. But the similarity between the building and plaintiff's design ceases to be of any value in the light of the fact that defendant tendered him the five hundred dollars, and thereby became the owner of and entitled to use his plans. The defendant, it is true, did not tender the money, only its check upon the bank with which it transacted business. The tender here was made by check, once by the assistant secretary, and again by the letter of the president of the defendant association, which was dated the twentieth of August. The plaintiff refused to receive the money, not because it was tendered by way of a check, but because he claimed the appointment of architect and superintendent. By declining to accept the award of five hundred dollars, the plaintiff waived the production of the money. *Berthold v. Reyburn*, 37 Mo. 595; *Whelan v. Reilly*, 61 Mo. 568.

The plaintiff, as we have said, bases his cause of action upon the resolutions of the nineteenth of April, and alleges that defendant's directors gave to his plans. the award of greatest merit under the terms thereof. This allegation he has failed to sustain by his proof. Indeed, the proof, instead of establishing the averment, shows beyond doubt that no such an award was ever made to his plans. It follows that this action must also fail.

3. The next question is, whether there is any evidence to support the defense of waiver and abandonment.

The proposition made by the plaintiff, and considered by defendant, introduced at least two new elements into the award. The resolutions inviting the competition do not require any architect to give security as to the cost of the structure, nor do they require the building to be erected in entire conformity to the plans awarded the greatest merit. The proposed contract between the plaintiff and defendant contemplated both of these new elements. It is surprising that such an offer should have been made by plaintiff or considered by the defendant; for if accepted it placed plaintiff in a position where his interests would be at war with his duty as superintendent. Had the proposed agreement been consummated, the plaintiff would have received the appointment of architect and superintendent, not by virtue of an award under the resolutions of nineteenth of April, but, in part at least, because of the new contract, and there would have been, to a certain extent, an abandonment of the terms of those resolutions. The parties may, however, have carried on these negotiations, intending all the while to return to the resolutions, if the new agreement should not be consummated. The proposed bond and contract and the negotiations in respect thereto do not, as a matter of law, as is urged by defendant, amount to an abandonment of the resolutions. That question is one of fact and not of law in this case.

The cost of the building was limited to four hundred · thousand dollars by the resolutions of the nineteenth of April. There is much evidence tending to show that the directors and the experts employed by them were of the opinion that the building could not be constructed of suitable material and workmanship under the plaintiff's plans for that amount, and that plaintiff knew he would not receive the award of greatest merit unless he gave the proposed guaranty. The negotiations concerning a new contract were carried on for a long time, without any expressed determination to return to those resolutions. The evidence, as a whole, tends to show that the plaintiff and defendant either lost sight of them, or intended to lay them aside for all time to come. It is true the plaintiff had no right to insist upon being appointed architect until he received the award of greatest merit; but his plans were before the directors for their consideration in making the award, and he had the right to waive the making of an award under and in pursuance of those resolutions if he saw fit so to do. It is our opinion there is evidence tending to support the defense of waiver and abandonment. But it is unnecessary to pursue this question, or to enter into an examination of the various objections made to the instructions. The plaintiff failed to make out a case, and the judgment is for the right party and should not be disturbed. *Noble v. Blount,* 77 Mo 235. Judgment affirmed. BARCLAY, J., not sitting; the other judges concur.