### FRANK LEVERONE *vs.* JOSEPH ARANCIO.

Suffolk.　March 19, 20, 1901. — September 3, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Contract*, Building contracts, Construction. *Agency*, Authority of architect. *Evidence*, Extrinsic to vary writings. *Practice*, *Civil*, Exception, Verdict. *Auditor's Report.*

An architect whose approval is a condition precedent to payments to be made under a building contract has no authority to waive an agreement by the owner as to the terms on which payment shall be made.

A building contract provided, that "the contractor under the direction and to the satisfaction of C., architect, acting for the purposes of this contract as agent of the said owner, shall and will provide all the materials and perform all the work mentioned in the specifications and shown on the drawings." *Held*, that this did not go further than to make the architect the agent of the owner in the matter of deciding whether the work done fulfilled the requirements of the specifications and drawings, and did not give him authority to waive, in behalf of the owner, the terms on which the owner had stipulated that the payments were to be made when the work described had been done to the architect's satisfaction.

The specifications of a building contract contained the following provisions: "Before any final estimate shall be allowed by the architect in charge, the contractor will be required to sign a certificate on said estimate that he will accept the same as a settlement in full for all claims against the owner on account of work done under this specification and contract. The contractor shall also sign and duly attest a statement, before final payment is made, that all claims for materials provided or labor performed on this property are paid and satisfied in full, and

that there are no claims whatsoever against the owner of this property." *Held*, that the foregoing requirements were conditions precedent which the contractor must fulfil before he could sue on the contract.

The mason's specifications of a building contract contained the provision "All needed permits must be obtained from the proper authorities." The construction of a bay window was included under the mason's specifications, and it appeared, that a permit for a bay window would be issued only upon a personal application by the owner of the property. It further appeared, that before the making of the contract the owner had applied twice for such a permit and had failed to obtain one, and that the permit was obtained by him six weeks after the contract was signed. The owner being sued on the contract sought to be allowed in recoupment for damages caused by the work being suspended for six weeks immediately after it was begun on account of the want of the bay window permit and also the amount of $22 expended by him in finally procuring such a permit. *Held*, that, if by the proper construction of the above provision of the specifications it was made the duty of the plaintiff to obtain the bay window permit, he had not undertaken, by agreeing to perform the work prescribed in the specifications, to insure that the permit would be issued without delay. *Held*, *also*, that the defendant was not entitled to be allowed the $22 paid by him, as the provision did not throw upon the plaintiff the duty of obtaining the bay window permit, which had to be obtained on the personal application of the owner. *Quære*, whether the requirement went any further than to provide that no work should be done until a permit had been obtained.

In the performance of specifications for plumbing in a building contract for altering and putting an additional story upon a four story house in Boston, each story being a separate tenement, the work disclosed the existence of an old kitchen sink waste' pipe smaller than the three inch pipe required by law for buildings of the height which this one when altered would be, and which ran where new bay windows were to be constructed. The contractor, at the request of the owner and his architect, put in a new three inch waste pipe in a place not to interfere with the bay windows, and connected the sinks with it. Before this was done, there was a discussion between the parties as to whether the new pipe would be an extra, and the architect with the consent of the defendant gave the plaintiff a written order "to proceed at once and finish plumbing according to contract, and if there is any additional cost for three inch pipe and connections, the same will be allowed." In a suit by the contractor in which he was not allowed to recover on the contract on account of his non-performance of conditions precedent, it was *held*, that the plaintiff was entitled to recover for putting in the new waste pipe and connecting the kitchen sinks with it as extra work outside of the contract. *Held*, *also*, that the trial judge did not err in leaving to the jury the question whether this plumbing was covered by the contract, as it was not a question of the construction of a contract, but depended upon what plumbing was in the building before the alterations were made, a question of fact for the jury. *Held*, *also*, that this extra work was covered by the written order, and that extrinsic evidence was competent to identify the "three inch pipe and connections" mentioned in the order.

A general exception to a portion of a judge's charge covering more than three pages of the printed record on a matter not pointed out to the judge by the excepting party is bad.

A contractor, who has altered a house under a contract requiring the work to be performed to the satisfaction of the architect of the owner, and requiring a certificate of the architect's approval before payment, may recover for items of

extra work specially ordered by the owner without the knowledge of the architect, although the architect has given no certificate of approval.

A general verdict on two counts for different causes of action one of which is good and the other bad must be set aside.

The objection that certain evidence contained in an auditor's report was inadmissible is no ground for excluding the report or for striking out those portions of it on a motion made at the trial.

CONTRACT brought in the name of the plaintiff for the benefit of the C. W. Leatherbee Lumber Company, to which the plaintiff had assigned all his claims against the defendant before the bringing of this action, upon a written building contract, dated September 6, 1898, set forth in the declaration, together with certain specifications and plans, whereby the plaintiff "under the direction and to the satisfaction of Frank M. Churchill, architect, acting for the purposes of this contract as agent" of the owner, agreed to "provide all the materials and perform all the work mentioned in the specifications and shown on the drawings" prepared by the architect for certain alterations and additions to a building owned by the defendant; with a second count upon an account annexed, for extra work done and materials furnished at the request of the defendant. Writ dated April 20, 1900.

At the trial in the Superior Court, before *Hopkins*, J., an auditor's report was introduced in evidence. The jury returned a verdict for the plaintiff in the sum of $530.03; and the defendant alleged exceptions to the admission of the auditor's report and to the refusal of the judge to strike out portions of it, and to certain portions of the judge's charge.

The exceptions and the matters to which they relate are stated in the opinion of the court. The only explanation required in addition is the following finding of the master in regard to a written order for three inch waste pipe given by the architect, mentioned towards the end of the third division of the opinion, namely: "I find that the parties, after some delay, determined, together with the architect, to put in a new three inch waste pipe for the sinks, and that at the defendant's request the new pipe was to be placed in the front corner of the back entry. The plaintiff contended that this new pipe would be an extra, and the defendant contended it would not be an extra. The architect, with the consent of the defendant, thereupon

gave the following order in writing to the plaintiff: 'Dec. 6, 1898. Frank Leverone, Esq., Dear Sir, — I wish you to proceed at once and finish plumbing according to contract, and if there is any additional cost for three (3) inch pipe and connections, the same will be allowed. Yours truly, F. M. Churchill, Architect. Alterations for J. Arancio, 149 North St.'"

*R. W. Bartlett*, for the defendant.

*R. S. Bartlett*, for the plaintiff.

LORING, J.  1. We are of opinion that the exception to the charge of the presiding judge, as to the plaintiff's failure to comply with the following provisions of the specifications, must be sustained : " Before any final estimate shall be allowed by the architect in charge, the contractor will be required to sign a certificate on said estimate that he will accept the same as a settlement in full for all claims against the owner on account of work done under this specification and contract. The contractor shall also sign and duly attest a statement, before final payment is made, that all claims for materials provided or labor performed on this property are paid and satisfied in full, and that there are no claims whatsoever against the owner of this property."

The presiding judge instructed the jury " as a matter of law, that it would be competent for the architect, as agent for the owner, to waive for the owner compliance with that stipulation on the part of the contractor that he would before final payment, give these certificates." Even if there was evidence on which the jury could have found that the defendant had waived these provisions and also evidence on which it could have been found that the architect was authorized to waive these provisions, it was error to instruct the jury as a matter of law that the architect could waive these provisions, and the only question was whether he had done so. The instruction, therefore, was wrong. An architect has no authority to waive an agreement by the owner as to the terms on which payment shall be made.

The provision of article 1 of the contract, that " the contractor, under the direction and to the satisfaction of F. M. Churchill, architect, acting for the purposes of this contract as agent of the said owner, shall and will provide all the materials and perform all the work mentioned in the specifications and shown on the drawings," does not go further than to make the architect the

agent of the owner in the matter of deciding whether the work done fulfilled the requirements of the specifications and drawings. Apart from an agreement to that effect an architect is not the general agent of the owner. See *McIntosh* v. *Hastings,* 156 Mass. 344; *Adlard* v. *Muldoon,* 45 Ill. 193; *Glacius* v. *Black,* 50 N. Y. 145. The provision in this contract did not give the architect authority to waive, in behalf of the owner, the terms on which the owner had stipulated in writing that the payments for the work were to be made when the work described had been done to the architect's satisfaction.

We are further of opinion that the contractor must fulfil the requirements of these two clauses before he can bring suit. The fair meaning of these two clauses is (1) that the last instalment shall not be due until the plaintiff agrees that that instalment will be accepted by him in full settlement of all claims against the owner on account of work done under the contract, and makes a certificate to that effect on the architect's certificate for that instalment; and (2) that the final instalment shall not be due until all claims for material provided or labor performed have been paid and satisfied in full and a written statement to that effect is made by the contractor. There was evidence that when this suit was brought there were outstanding claims for labor and materials, and there was no pretence that either the certificate or the statement mentioned above had been made.

The result is that this action was prematurely brought. Although these two provisions prevent the contractor from getting credit directly from the material men and the workmen employed by him, there is nothing to prevent his borrowing the money due them from others, and paying them off with it; if he does so, and then makes the required written statement that nothing is due for material furnished or labor performed, and also makes certificate on the architect's certificate for the final payment, that he accepts it, as stated therein, in full settlement of all claims " on account of work done under this specification and contract," he will be entitled, on proving what the jury found he proved in this case, to recover on the first count. He is entitled to recover on the second count, without making these certificates; the ground on which he is entitled to recover for that work, if he is entitled to recover for it without having got

an order from the architect for the extra work covered by that count, is that the work is done outside of the contract.

As the case must go back for a new trial, we will dispose of the other questions which have been argued. It is doubtful whether all of these questions are open to the defendant, who made no requests for rulings, but contented himself with general exceptions to different parts of the charge. But we have not stopped to consider the question whether they are open to the defendant or not.

2. The defendant's contention is not well taken that he is entitled to a claim against the plaintiff by way of recoupment for damages caused by the work being suspended for some six weeks immediately after it was begun, and for $22 expended by him in procuring a building permit to construct the new bay windows on Fulton Street. The delay in question was caused by the fact that the permit for the construction of the new bay windows was not obtained until October 14, about six weeks after the contract was signed ; the contract was signed September 6, 1898.

It appeared in evidence that a permit for a bay window " would be issued only upon a personal application by the owner of the property " ; and further, there was evidence that the " defendant had applied for a bay window permit and had failed to obtain one " some time before the contract was signed, and that " he applied a second time in August, 1898, also prior to the signing of the contract, so that when the contract was signed, the bay window permit had been applied for by the defendant, and was, after some delay, obtained on October 14, 1898."

In the specifications, which are stated to be " Specification for Material and Labor Required for Alterations on Building for J. Arancio, Esq.," the following provision is made under the heading " Mason's Specifications " : " Permits — All needed permits must be obtained from the proper authorities." The work of constructing the bay windows is included under this heading of " Mason's Specifications." The defendant contends that this clause makes the plaintiff liable for all damages which ensued, from the fact that the permit which had been applied for by the defendant for the second time before the contract was signed,

was not obtained until six weeks after that contract was signed, — on October 14, 1898. It is hardly necessary to say that if, by the proper construction of this provision of the specifications it is made the duty of the plaintiff to obtain the bay window permit, he has not undertaken, by agreeing to perform the work described in these specifications, to insure that the permit will be issued for a bay window without delay.

The further question of the expense of $22 admits of some doubt; but we are of opinion that this provision does not throw upon the plaintiff the duty of obtaining the bay window permit, which must be obtained on the personal application of the owner. It may be doubted whether it goes any further than to provide that no work must be done until a permit has been obtained.

3. The next exception is to the charge of the presiding judge as to items 1, 3, and 4 of Account A, amounting to $87.47, included in the first count; these, together with two other items, 1a and 2, amounting in all to $101.47, being the amount of extra work which was ordered in writing by the architect and the amount of which, by the terms of the contract, was to be added to the contract price.

Items 1, 3, and 4, amounting to $87.47, were the value of labor performed and material used in doing certain plumbing and in doing the necessary carpentering in connection with it. There was evidence that this plumbing was done under the following circumstances: Before the alterations provided for by the contract were made, the building in question was a four story house on the corner of North Street and Fulton Place in the city of Boston, each story being a separate tenement, consisting of a parlor, fronting on North Street and occupying the whole width of the building; back of that a kitchen on Fulton Place, and a bedroom on the inner wall; and back of the kitchen and the bedroom an entry which ran the full width of the building; in this entry were the stairs. The alterations provided for by the contract consisted in putting on a fifth story to the house, and in cutting out the wall on Fulton Place for the whole width of the kitchens and enlarging the kitchens by throwing out a bay window where the wall had been cut away. As the building stood before the alterations, there was a kitchen sink on

each story, standing against the inside of the outer wall of the building on Fulton Place; there was an old water closet in the entry on the first floor back of the kitchen and bedroom. The provisions of the contract as to plumbing, which are material in this connection, were as follows: " Provide and set on fourth floor closet, as shown on plan with all proper traps and vents (combination hopper and hardwood seat and covers; open work), vent pipe to be 4″ iron with all proper Y branches and bends to receive drainage from all other fixtures and conductors. Vent pipe to be carried five feet above roof. Plumber is to re-move sinks in the third and fourth floors and replace with same size as on second floor; also on fifth floor. Do all repairs on old plumbing." The plan showed a water closet on the fourth floor in the Fulton Place corner of the back entry, with its back against the rear partition wall of the building. There was also evidence that soon after the work under the contract began, the plaintiff put in this water closet on the fourth floor with a straight vent or waste pipe discharging into the same drain in the cellar into which the vent or waste pipe of the old water closet on the first floor discharged. The waste pipe from the sinks, before the alterations, ran down the wall on the Fulton Place side connecting with the same drain pipe in the cellar mentioned above. When the Fulton Place wall of the kitchens was cut away, the old waste pipe from the kitchen sinks was left run-ning up through the kitchens where the new bay windows were to be. It was then discovered that this old kitchen sink waste pipe was two or two and a half inches, while the law required a three inch pipe for buildings of the height which this building, when altered, would be. After the new vent or waste pipe for the water closet on the fourth floor had been put in, and the two or two and a half inch waste pipe of the old kitchen sinks had been brought to light and left running up through where the bay window was to be after the Fulton Place outer wall had been cut away, the defendant and the architect requested the plaintiff to put in a three inch waste pipe for the sinks in the front corner of the back entry and to connect the sinks with that waste pipe. The extra work now in question was the work done in putting in this three inch waste pipe and connecting the kitchen sinks with it.

In our opinion, if the jury believed these to be the facts, the putting in of the new three inch waste pipe and connecting the kitchen sinks with it was work not covered by the contract. The defendant contends that the general provision in the specifications that the vent or waste pipe for the new water closet should have " all proper Y branches and bends to receive drainage from all other fixtures and conductors" imposed upon the contractor the duty of connecting the kitchen sinks with the four inch waste pipe of the new water closet, although these sinks had been previously connected with a waste pipe of their own which it was not stated in the contract was to be abandoned, and although the waste pipe of the water closet was separated from the sinks by the whole width of the back entry and the partition wall between the back entry and the kitchen. There is nothing in this contention.

Neither is there anything in the contention that the exception to the judge's charge must be sustained, because the judge left the construction of the written contract between the parties to the jury. The question whether this plumbing was work covered by the contract or not, really depended upon what the plumbing was in the building before the alterations were made, and that question had to be left to the jury. If the charge of the presiding judge can be construed to go beyond this, the defendant cannot avail himself of that objection. He did not point out that objection to the judge, but contented himself with the general exception to the part of the charge dealing with these three items of extras covering more than three printed pages of the record. *Barker* v. *Loring*, 177 Mass. 389.

We are of opinion that this work was covered by the written order, within the provisions of the contract. The written order stated that if there is any additional cost for three inch pipe and connections, the same will be allowed. It is competent to identify by parol evidence what the " three inch pipe and connections" mentioned in the written order meant. There was evidence that for item 2, " Closet on the top floor, $5," a written order was given, " and the price of the same fixed by the architect." It is so stated in the auditor's report. The same is true of item " 1a, for setting pipe underneath the floor, $9."

4. The next exception is to the charge of the judge in respect

to the extras covered by the second count, amounting to $35.54. There was evidence that these items had been specially ordered by the defendant without the knowledge of the architect, whereby the jury could find that the plaintiff was entitled to recover for them, although no written certificate had been given therefor, within *Bartlett* v. *Stanchfield,* 148 Mass. 394.

Had there been a separate verdict on this count, as there should have been, since that count was not for the same cause of action as that covered by the first count, the verdict on the second count would have stood; but a general verdict was taken on both counts, and that verdict must be set aside.

5. Before the auditor's report was read to the jury, the defendant "called the attention of the court to those provisions of the contract hereinbefore set forth, which the defendant claims constitute conditions precedent to plaintiff's right to recover, and objected to the admission and to the reading of said report to the jury"; he also called attention to the portions of the report, as hereinbefore set forth, relating to the auditor's finding on items 1, 3, and 4 on the plaintiff's account annexed, "A," and requested the court "to order stricken out of said report, all evidence contained therein relative to said items, except such evidence, if any, as tended to show that there had been additional three inch pipe and connections used in finishing the plumbing according to contract, and the value of said three inch pipe and said connections." And also "defendant's attorney called attention to those parts of said report relative to extras claimed in his account annexed B, all of which was allowed by the auditor to the plaintiff; and the defendant's attorney asked the court to order all of said parts of said report stricken out of said report." These motions were rightly refused. *Briggs* v. *Gilman,* 127 Mass. 530. *Collins* v. *Wickwire,* 162 Mass. 143. *Sullivan* v. *Arcand,* 165 Mass. 364. *Winthrop* v. *Soule,* 175 Mass. 400.

*Exceptions sustained.*