IPSWICH MILLS vs., WILLIAM DILLON & another.

Suffolk.    March 8, 1927. — July 1, 1927.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Accountant,* Ownership of letters, work sheets, and memoranda.   *Agency,*
   Independent contractor.

A corporation to gain possession of certain documents brought a suit in
   equity against a firm of certified public accountants who, during the
   years 1913–1925, were employed by the plaintiff to make an annual
   audit, to prepare tax returns, and to perform services on matters of
   bookkeeping, cost accounting and statements for banks, and in 1922 or
   1923 to conduct a Federal tax case before the bureau of internal revenue
   as attorneys in fact for the plaintiff.   It appeared that there had been
   no special agreement between the parties as to ownership of such
   documents.   The defendants conceded that papers which originated in
   the plaintiff's office or in the office of its selling agents or of someone
   associated with them were the property of and should be returned to the
   plaintiff.   As to other papers, it was *held,* that
       (1) The defendants were not the agents or servants of the plaintiff;
   they were independent contractors;
       (2) The defendants owned and had a right to retain copies made by
   them of Federal tax returns by the plaintiff prepared by the defendants;
       (3) The defendants owned and had a right to retain carbon copies of
   letters from the defendants to the plaintiff, original letters from the
   plaintiff to the defendants, original letters to the defendants from the
   plaintiff's attorneys, and carbon copies of letters from the defendants
   to the collector of internal revenue;
       (4) The defendants owned and had a right to retain their work sheets,
   that is, papers on which original compilations, computations and analy-
   ses were made by the defendants, which later were gathered in a sum-
   mary form and the figures rendered in a schedule, exhibit, report or
   return upon which the defendants had worked;
       (5) The interest of the plaintiff in the information collected and
   copied by the defendants and the confidential nature of this information
   did not give title to the plaintiff of the defendants' working papers;
       (6) *Whether* the plaintiff had a right to restrain publication of the
   contents of any of the documents or papers above described was not
   determined.

BILL IN EQUITY, filed in the Superior Court on February 25,
1926, to require the defendants, certified public accountants,
to deliver certain documents to the plaintiff.

In the Superior Court, the suit was heard by *Weed,* J., a

stenographer having been appointed under G. L. c. 214, § 24, Equity Rule 29 (1926). Material facts found by the judge and the final decree entered by his order are stated in the opinion. The judge reserved and reported the suit to this court for determination.

*R. G. Dodge, & J. H. Covington* of the District of Columbia, for the defendants.

*John S. Stone,* for the plaintiff.

*S. Gordon* of the District of Columbia, by leave of the Court, filed a brief as *amicus curiae.*

CARROLL, J. The question involved in this suit in equity is the ownership of certain papers. The plaintiff is a manufacturer of hosiery. The defendants are accountants, father and son, who have been partners since January 1, 1921. In 1912 or 1913 the father, and later the firm, were employed by the plaintiff as accountants to make an annual audit, to prepare tax returns, and to perform services on matters of bookkeeping, cost accounting and statements for banks. This employment continued until December, 1925. In 1922 or 1923 the defendants were employed to conduct a Federal tax case before the bureau of internal revenue as attorneys in fact for the plaintiff. While a Federal revenue agent in January, 1926, was making an examination of the plaintiff's returns for the years 1922, 1923, 1924, he was sent by the plaintiff to the defendants to examine certain papers in their possession relating to the plaintiff's affairs, more particularly the defendants' "work sheets" relating to the revaluation of the plant assets and to certain adjusted inventories developed in their work on the tax case. The defendants refused the revenue agent access to these papers. On January 6, 1926, the plaintiff demanded of the defendants "all papers in your possession belonging to Ipswich Mills." No papers were delivered and this suit was instituted.

All the papers involved which were in the defendants' possession were produced by them at the trial. They were examined by the parties, grouped, initialled and impounded, awaiting the final decision of the case. Group A consisted of papers that originated in the plaintiff's office or in the office of its selling agents, or of some one associated with

them, including papers relating to the 1917 Federal tax return of the plaintiff. The defendants conceded that the plaintiff is the owner of these papers in Group A, and entitled to possession of them. Group B included copy of the amended Federal tax return of the plaintiff for the year 1918, and certain papers (not work sheets) relating thereto. In Group C there were copies of the plaintiff's tentative and amended Federal tax return for 1919 with work sheets and correspondence in connection therewith. In Group D were papers and work sheets of the revaluation of the plaintiff's plant assets. The papers in Group E were the defendants' work sheets of their July, 1922, report. Group F included papers, reports, returns, copies, work sheets, data, correspondence and memoranda respecting the tax case, together with some letters originating in the plaintiff's office.

It was found by the trial judge that "work sheets" meant papers on which original compilations, computations and analyses are made by accountants, which later are gathered together in a summary form and the figures rendered in the schedule, exhibit, report or return upon which the accountant is working. The judge ruled that the plaintiff was the owner of the papers in groups B, C, D and E, and entitled to the immediate possession of them, the defendants being entitled to take and preserve such photostatic copies as they desired. With reference to the papers initialled F, the judge ruled that the parties were jointly interested in these particular papers, with the right in the plaintiff to take them temporarily from the defendants. An order for a decree was made. The case was then reported to this court.

Concerning the papers marked B, which consist of "copy of amended Federal tax return of the plaintiff for 1918 and certain papers (not work sheets) relating thereto," the judge found "the defendants were under employ as accountants, — auditing, checking up and verifying, and making a research for the original costs of the plaintiff's plant assets then in use and applying depreciation figures decided upon by the directors with respect to the different classes of property. It was work of a character requiring accounting skill and experience, and good judgment in reaching sound and depend-

able conclusions where original entries were obscure or vouchers missing. It was fully paid for by the plaintiff." We assume that the original tax return was delivered to the plaintiff and the copy of this return retained by the defendants. The defendants were not the agents or servants of the plaintiff; they were independent contractors. In the making of the documents and papers and in collecting the information involved in them, the defendants were independent accountants engaged in their own occupation. See *Pearl* v. *West End Street Railway,* 176 Mass. 177, 179; *Leverone* v. *Arancio,* 179 Mass. 439, 443. They had the right to make and retain copies of the tax return. It might be necessary to have possession of the copies if the accuracy of their work was questioned. There was nothing in the contract of employment which required the defendants to surrender this copy and in the absence of such an agreement they could not be compelled to surrender it. The other papers relating to the Federal tax return of 1918, mentioned in Group B, we understand are office copies of letters sent by the defendants. The defendants could retain copies of these letters as well as copies of the schedules which are indicated by the evidence as being a part of the "papers . . . relating thereto." This copy of the return and the papers relating thereto may have contained information of importance to the plaintiff. The right of the plaintiff to restrain its publication is not before us. Even if it be assumed that the defendants could be enjoined from the publication of the contents of these papers, the title to them was in the defendants.

Group C consisted of (1) carbon copies of letters from the defendants to the plaintiff; (2) original letters from the plaintiff to the defendants; (3) original letters to the defendants from the plaintiff's attorneys; and (4) carbon copies of letters from the defendants to the collector of internal revenue.

The carbon copies of the defendants' letters to the plaintiff were the property of the defendants. The plaintiff did not own these copies and was not entitled to their possession. The contract of employment did not require the defendants to furnish these copies to the plaintiff.

The original letters from the plaintiff to the defendants belonged to the defendants. They were the recipients, and therefore owned them. It was decided in *Baker* v. *Libbie,* 210 Mass. 599, 606, after an exhaustive review of the authorities, that as a general rule the publication of letters may be restrained by the author, but in the absence of some special arrangement the recipient of the letter is the owner. "The author parts with the physical and material elements which are conveyed by and in the envelope. These are given to the receiver. The paper upon which the letter is written belongs to the receiver. *Oliver* v. *Oliver,* 11 C. B. (N. S.) 139. *Grigsby* v. *Breckinridge,* 2 Bush, 480, 486. *Pope* v. *Curl,* 2 Atk. 341. *Werckmeister* v. *American Lithographic Co.* 142 Fed. Rep. 827, 830. A duty of preservation would impose an unreasonable burden in most instances. It is obvious that no such obligation rests upon the receiver, and he may destroy or keep at pleasure." The same principle is applicable to the letters sent from the plaintiff's attorneys to the defendants. As the defendants were the receivers of these letters, they were the property of the defendants.

The carbon copies of the defendants' letters to the collector of internal revenue did not belong to the plaintiff. Whatever right it may have to examine these copies, or take copies of them, which point we are not called upon to decide, the defendants' copies did not belong to the plaintiff; they were owned by the defendants. The fact that the copies of these letters concern the plaintiff is not a sufficient reason for depriving the defendants of their property. In writing the letters the defendants were not the plaintiff's servants.

In Group C there are copies of Federal tax returns. These, as we understand from the record, were the defendants' office copies. The record shows that copies of all returns and schedules prepared by the defendants for the plaintiff were sent to the plaintiff. Even if the plaintiff has a right to require further copies, a question not involved in this suit, it has no right to demand of the defendants the surrender of these office copies. They were the property of the defendants.

The work sheets, as defined by the trial judge, were the

defendants' property. They were made by them while engaged in their own business. The paper on which the computations were made belonged to them. They were not employed to make these sheets. The sheets were merely the means by which the work for which the defendants were employed might be accomplished. The title to the work sheets remained in the defendants after the computations were made. In the absence of an agreement that these sheets were to belong to the plaintiff, or were to be held for it, they were owned by the defendants. It may be that these papers contained information confidential in its nature and of importance to the plaintiff; but the defendants did not receive this information as the plaintiff's servants. It has been held that plans prepared by an architect employed for that purpose belong to the one for whom they are made. *Walsh* v. *St. Louis Exposition & Music Hall Association,* 101 Mo. 534, 545. *Gibbon* v. *Pease,* [1905] 1 K. B. 810. See *Kutts* v. *Pelby,* 20 Pick. 65, 66. But it has never been decided so far as we know that the preliminary plans and sketches of an architect belong to the person by whom the architect is employed, see in this connection *Rutan* v. *Coolidge,* 241 Mass. 584; nor has it been held so far as we are aware that the preliminary sketches and drawings of an artist employed to paint a portrait belong to the sitter; or that memoranda made by a physician of his examination of a patient, or the notes and records of a lawyer, his preliminary drafts of legal documents or his minutes of testimony, belong respectively to the patient or client. See *Anonymous,* 31 Maine, 590; *In re Wheatcroft,* 6 Ch. D. 97. As to property rights in a negative where a photograph is taken for pay in the usual course, see *Boucas* v. *Cooke,* [1903] 2 K. B. 227, 238; *Pollard* v. *Photographic Co.* 40 Ch. D. 345. The interest of the plaintiff in the information collected and copied by the defendants and the confidential nature of this information do not give title to the plaintiff of the defendants' working papers. They were made by the defendants solely for their own assistance in preparing the tax returns.

With reference to Group F, the letters addressed to the defendants, copies of letters written by the defendants,

copies of returns furnished to the plaintiff, and work sheets relating to the tax case, are the sole property of the defendants, and this is true of the papers and reports collected by the defendants in the preparation of the tax case. The plaintiff is not jointly interested with the defendants in these documents. We do not understand that any of these reports, papers and returns were property of the plaintiff which had been placed in the defendants' custody by the plaintiff or merely delivered to the defendants. If there are any papers belonging to the plaintiff which were lent to the defendants, the plaintiff is entitled to them; but as we construe the record, the papers referred to in Group F were gathered and collected by the defendants in the course of their business, and were not papers of the plaintiff placed by it in the defendants' possession.

On the record of the evidence disclosed in this case, the defendants were under no legal obligation to surrender their working sheets or other papers to the plaintiff. The testimony of Leonard and Dillon does not prove that the defendants gave the plaintiff any right or title in them. It is apparent that at one time papers in the possession of the defendants, including their working papers, were turned over to the plaintiff, for which receipts were given by the plaintiff to the defendants. These papers were again returned to the defendants. The plaintiff contends that by this transaction the plaintiff's rights of property and possession of all these papers were settled. Dillon testified that these papers were merely lent to the plaintiff. An investigation of the letters and receipts, and an examination of the record, do not satisfy us that the defendants in placing these documents in the possession of the plaintiff intended to part with their title and property in them.

It follows that the papers in Group A belong to the plaintiff. The other papers and documents belong to the defendants. A decree is to be entered for the plaintiff, directing that the plaintiff is the owner and entitled to immediate possession of the documents described in Group A.

*Ordered accordingly.*