**PALACE CAFE v. HARTFORD FIRE INS. CO.**

**SAME v. NATIONAL SECURITY FIRE INS. CO.**

Nos. 6450, 6451.

Circuit Court of Appeals, Seventh Circuit.

May 11, 1938.

Rehearing Denied July 7, 1938.

768

C. G. Myers and C. F. Snerly, both of Chicago, Ill., and G. A. Farabaugh, of South Bend, Ind. (Myers & Snerly, of Chicago, Ill., and Farabaugh, Pettengill & Chapleau, of South Bend, Ind., of counsel), for appellants.

Floyd O. Jellison, of South Bend, Ind. (George A. Crane, of South Bend, Ind., of counsel), for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendants appeal from judgments entered against them upon two insurance policies. The policy of the Hartford Fire Insurance Company covered loss of property by riot, civil commotion, or explosion; that of the National Security Fire Insurance Company, loss of use and occupancy occasioned by riot, civil commotion, and explosion. The losses for which claim was made under each policy were caused by an explosion, which destroyed plaintiff's property located on leased premises.

Defendants assert as error that there was no substantial evidence to support the verdicts; that the court should have granted each of defendants' several motions for a directed verdict; that the court admitted improper evidence offered by plaintiff and excluded proper evidence offered by defendants, unduly limited cross-examination of plaintiff's witnesses and wrongfully overruled defendants' several motions for new trial.

 Each policy contained a provision requiring the assured to submit to an examination. Plaintiff employed Blondell & Company, insurance adjusters, to prepare its proof of loss and to adjust the claims, if possible. For these services this firm was to be paid a certain sum irrespective of results and, in case of successful adjustment, an additional compensation. The firm designated its employee Wallace H. Lancton as its representative to attend to the details in making the claim and attempting adjustment. Defendants contend that Lancton was the authorized agent of plaintiff and that, therefore, the failure of plaintiff to comply with their demand to produce him for examination was a violation of the provisions of the policies. Under the facts stated, the insurance adjustment firm was an independent contractor and Lancton an employee thereof. He was not an officer or employee of the plaintiff. Ipswich Mills v. William Dillon et al., 260

Mass. 453, 157 N.E. 604, 53 A.L.R. 792; Pearl v. West End St. R. Co., 176 Mass. 177, 57 N.E. 339, 49 L.R.A. 826, 79 Am.St.Rep. 302; Leverone v. Arancio, 179 Mass. 439, 61 N.E. 45; Wright v. Fissell, 92 N.J.Eq. 508, 113 A. 699. There is no evidence that the plaintiff reserved any right to control the activity of Blondell & Company or any detail of performance of any of its contractual duties. The policies provide for examination of the assured. This includes only its corporate agents, not an independent contractor or attorney. Fidelity & Casualty Co. v. Carroll, 186 Ind. 633, 117 N.E. 858.

Defendants assert that plaintiff refused and failed to produce its bank statements or copies thereof or to permit defendants to inspect the bank records pertaining thereto and failed to preserve and produce an inventory of merchandise. This alleged failure of the plaintiff, it is asserted, was a violation of the terms and conditions of the policies, which provided that the assured might be required to produce all books of accounts, bills, invoices and vouchers, or copies thereof, if the originals should be lost. The evidence disclosed that the books of plaintiff included a general ledger, accounts payable ledger, daily journal or cashbook, corporation minute book and corporation stock book, all of which were kept on a desk in the office, being too large to put into the safe. The entire office was blown to pieces, and the testimony of plaintiff's witnesses was that all books were lost or destroyed except the accounts payable ledger, which was found some two or three blocks from the place of explosion. This book was delivered to defendants at the time of the examination requested. They took it to Chicago and had photostatic copies made of its pages, which were received in evidence. Thereafter, in some manner not beyond dispute, the book disappeared, but, in view of the sworn inability to produce it and the presence of the photostatic copies, no breach of the covenants of the policies occurred because of the book's absence. It should be observed that the record is silent as to notice for production of the books at any certain time or place and before any certain named officer. Such definite character of notice is essential.

Plaintiff testified that it produced all records it had regarding the bank account. There is no evidence that it objected to defendants examining the books of the bank with reference to its deposit account.

The inventory taken prior to the time of the explosion was on separate slips of paper. It was not complete, but such portions as had been finished were delivered to the adjuster, who kept them in his room. He copied them in a loose leaf book, which was produced, but did not know what finally became of them. He testified that he seached for them but was unable to find them. As to whether the disputed evidence as to non-production of any records was sufficient to constitute a breach of the policies, the question was one of fact for determination by the jury.

Defendants assert that the evidence disclosed fraudulent accounts, fraudulent concealment and false swearing by plaintiff, its officers, agents and representatives, knowingly and willfully committed, in violation of the policies' provisions forbidding such. Plaintiff contends there was no breach of the policies in this respect. The respective parties offered evidence bearing upon this issue and the jury was instructed by the court; its findings must be accepted. True, a misstatement in the proofs of loss willfully made will avoid a policy, but an innocent mistake will not amount to fraud or false swearing. Franklin Insurance Co. v. Culver, 6 Ind. 137. The adjuster explained the discrepancies between the items in the proofs of loss and the figures produced at the trial. Whether his explanation was to be believed, and whether he willfully made a false misstatement was a question of fact for the jury. The discrepancy between the amount fixed in a claim for loss and the amount of a settlement or of a judgment is not proof, as a matter of law, of fraudulent intent to misstate the facts; nor is mere exaggeration of the amount in the proof of loss, a fraud unless made willfully with intention to mislead the insurer. Such question of willfulness is a question for the jury. Spring Garden Ins. Co. v. Amusement Syndicate Co., 8 Cir., 178 F. 519; Camden Fire Ins. Assoc. v. Penick, 5 Cir., 2 F.2d 964; Damico v. Firemen's Fund Ins. Co., 8 Cir., 5 F.2d 318; Phoenix Ins. Co. v. Wintersmith, Ky., 98 S.W. 987. For the same reason a wrongful inclusion of an article as destroyed, in the absence of proof that it was willfully and intentionally made, will not amount to fraud in the proof of loss as a matter of law. Runkle v. Hart-

770

ford Ins. Co., 99 Iowa 414, 68 N.W. 712; Garner v. Mutual Fire Ins. Co., Iowa, 86 N.W. 289.

■ Defendants contend that plaintiff had acquired possession of the property lost by means of a foreclosure in fraud of creditors of two previous owners and that concealment of this fact from defendants avoided the policies. This contention is grounded almost entirely upon the testimony of one Zagouras, by way of deposition. His statements were disputed by witnesses for plaintiff. Consequently whether there was fraud in the acquisition of the property, if at all material to the issues in this case, was a question of fact for the jury under proper instructions from the court. Plaintiff's witnesses all denied any fraudulent act and the jury by its verdict must have found that there was none. The evidence for plaintiff indicated that title was secured through regular foreclosure proceedings conducted in accord with the law.

■ Defendants contend that the only inferences possible to be drawn from the evidence are consistent only with a judgment for defendants; but the evidence was disputed and hotly contested, and that of the plaintiff was sufficient to supply inferences supporting plaintiff's theory. Again the question was one for the jury.

■ Defendants contend that the court erred in refusing to receive in evidence the summation of audits prepared by the certified public accountant Busby. The regular auditor of plaintiff, DeVilliers, made an audit of the books every month. These audits were produced at the trial and were introduced by the defendants while the witness Lancton was testifying. Busby was called as an expert witness to elaborate upon and explain these reports. At the conclusion of his testimony, defendants sought to introduce exhibits that contained his tabulations. They covered exactly the same matter as his parol testimony and were merely a repetition thereof in tabulated form. It was entirely discretionary with the court whether it should admit such computation. It was not probative evidence; it could have been received only as a tool of convenience for the jury. At any rate, no prejudicial error occurred through the exclusion of this evidence, which was merely cumulative to and repetition of the oral testimony.

■ It is urged that the court erred in admitting incompetent and prejudicial testimony of replacement value of the property destroyed. But the evidence discloses that practically all of the values mentioned by the witnesses were received in evidence without objection and that by common consent, counsel for both parties agreed that testimony of replacement costs of the property, new, less depreciation, could be received. Both plaintiff and defendants offered such evidence. The evidence for plaintiff disclosed replacement cost of the property new with an allowance for depreciation and the verdict was for an amount at least forty per cent less than such replacement value. Consequently, the jury must have taken into consideration depreciation, testimony as to which was submitted by the respective parties. In addition to proving replacement value, less depreciation, plaintiff offered parol evidence of at least four witnesses as to the cash value of the property. That the insurance was not excessive must be taken as accepted, from the fact that the defendants inspected the property and their agent checked the value thereof before the loss.

■ Defendants complain that the court improperly refused to permit them to attack the credibility of plaintiff's witness McErlain. He testified from his recollection as to the cost of certain alterations in the property made some five years previously. On cross-examination, the question was put to him as to whether he recalled definitely the amount of money paid him on an alteration job for plaintiff five years before. Objection thereto was sustained. But the record discloses that this alteration had to do with the construction of a hat shop in the corner of the Palace Building, and no loss was claimed on account thereof. Clearly the question was immaterial.

■ Defendants assert that the court admitted improper evidence in behalf of plaintiff pertaining to the installation and replacement value of different items of loss claimed on the ground that they became part of the building and hence no part of plaintiff's property. A controverted question during the trial was as to whether certain improvements and betterments became a part of the real estate or remained personal property of the tenant. Plaintiff contends that no part of anything it claimed ever became a part of the real estate and Lancton so testified. Defendants contend that various items, however, were fixtures attached to and a part of the real estate, the chief item being certain wainscoting.

It appears that the building was bare when rented; that plaintiff placed next to the concrete wall certain wood risers or stretchers and placed thereon the wainscoting. It was not attached to the concrete wall and could be removed without injuring the concrete. Various witnesses testified in this respect and the jury had a right to believe, under the instruction of the court, that the wainscoting could be removed and never lost its character as chattel property. Greensburg Bank v. Dept. of Financial Institutions, Ind.App., 11 N.E.2d 1008.

Defendants contend also that the court admitted improper evidence upon the question of value, in that certain witnesses, in giving their valuations, were permitted to consider the number of seats in the restaurant and a witness was permitted to base his opinion as to value upon facts testified to by others. We find no error in this respect.

Defendants complain also because plaintiff's proof of loss was admitted. Obviously, the proof of loss could be admitted only for the purpose of showing that it had been made and the court limited the admission to that purpose.

Various other contentions are presented but it is believed that they are disposed of in what we have said. We have no right to substitute our judgment for that of the jury.

Finding substantial evidence in the record to support the verdict for plaintiff and no prejudicial error, the judgments of the District Court are affirmed.