T.C. Memo. 2016-149

UNITED STATES TAX COURT

KAREN KAPLAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2059-14.                               Filed August 9, 2016.

Karen Kaplan, pro se.

John Chinnapongse and Sharyn M. Ortega, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent issued a notice of deficiency determining a

$144,534 deficiency in petitioner's 2011 Federal income tax.  After concessions,[1]

---

[1]  Respondent conceded that petitioner is entitled to deductions of $4,392
for real estate taxes, $35 for personal property taxes, $350 for foreign taxes, $45
for tax return preparation fees, $47 for other expenses, $151 for cash contributions

(continued...)

[*2] the remaining issues for decision are: (1) whether the Court has jurisdiction to order a refund resulting from alleged overpayments for prior tax years and (2) whether petitioner is entitled to certain itemized deductions for State income taxes and noncash charitable contributions.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated by this reference. At the time the petition was filed, petitioner resided in California.

Petitioner is an artist, art teacher, and investor. She has a pattern of filing her Federal income tax returns late.[3] Even though she received an extension of time until October 15, 2012, to file her 2011 return, petitioner failed to make such a filing for over a year after that date. On May 20, 2013, respondent filed a substitute for return for petitioner's 2011 tax year. On January 6, 2014,

---

[1](...continued)
to charity, and $763 for charity-related mileage expenses. Respondent also conceded that petitioner is not liable for any of the additions to tax determined in the notice of deficiency.

[2] Respondent otherwise accepted petitioner's 2011 return with the exception of these issues before the Court and any resulting computational adjustments.

[3] Petitioner did not timely file her Federal income tax returns for tax years 2006, 2007, 2008, 2009, 2010, and 2011.

**[\*3]** respondent issued petitioner a statutory notice of deficiency determining an income tax deficiency for tax year 2011 of $144,534 and the following additions to tax: $9,776.25 under section 6651(a)(1) for failure to file on time; $637.86 under section 6654(a) for failure to pay estimated tax; and $3,910.50 under section 6651(a)(2) for failure to pay on time.[4]

Petitioner timely filed a petition with this Court and requested a trial in San Francisco. In the petition, she disputed the deficiency and alleged that she had overpaid her tax liabilities for prior years, resulting in credits to her account that should have been recognized for 2011. Petitioner further argued that she made estimated tax payments for 2011 in excess of her tax liability and should be due a refund.

Petitioner eventually submitted an income tax return for tax year 2011 to the Internal Revenue Service Office of Appeals on or about May 25, 2014. Respondent made concessions based on the return but still challenges a carryforward credit from alleged overpayments for prior years, a deduction for State income taxes paid, and certain charitable contribution deductions. A trial

---

[4] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*4]** was held in San Francisco on January 5, 2015, to determine whether petitioner was entitled to the disputed deductions and carryforward credits.

OPINION

I.    The Court's Jurisdiction Over Prior Year Overpayments

The first issue is whether petitioner is entitled to a credit for 2011 resulting from alleged overpayments of her tax liabilities for prior years.  At trial and in her other filings petitioner attempted to trace overpayments of her Federal income tax carried forward from 2006, 2007, 2008, 2009, and 2010.  Petitioner urges the Court to recognize the alleged overpayments for prior years and issue a refund to the extent she has a credit balance.

In determining the correct tax for the taxable year, section 6214(b) allows us to "consider such facts with relation to the taxes for other years * * * as may be necessary" but explicitly deprives us of "jurisdiction to determine whether or not the tax for any other year * * * has been overpaid or underpaid".

We have previously construed section 6214(b) as granting us the authority for "computing, as distinguished from 'determining,' the correct tax liability for a year not in issue when such a computation is necessary to a determination of the correct tax liability for a year that has been placed in issue."  Lone Manor Farms, Inc. v. Commissioner, 61 T.C. 436, 440 (1974), aff'd, 510 F.2d 970 (3d Cir. 1975).

**[\*5]**  Petitioner has asked us to do much more than merely compute the correct tax liability for a nondeficiency year.  Petitioner urges us to determine an overpayment for the deficiency year by crediting overpayments from nondeficiency years to 2011.  Section 6214(b) prevents us from doing so.  See, e.g., Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418, 420-421 (1943); Patronik-Holder v. Commissioner, 100 T.C. 374, 377 (1993); Porter v. Commissioner, T.C. Memo. 2010-154; Stewart v. Commissioner, T.C. Memo. 1998-319.

The notice of deficiency before the Court pertains only to tax year 2011.  Therefore, the Court lacks jurisdiction over years 2006 through 2010, and we are unable to determine whether alleged overpayments for those years may be credited, refunded, or applied to the 2011 tax year.[5]

II.  Itemized Deductions

The next issue is whether petitioner is entitled to deductions for State income taxes and noncash charitable contributions.  Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that she is entitled to the deductions claimed.  See Rule 142(a); INDOPCO, Inc. v. Commissioner,

---

[5]  As respondent admits, however, petitioner is due a refund to the extent her Federal income tax withholdings for 2011 exceed her Federal income tax due for the year.

[*6] 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Taxpayers are required to maintain records that are sufficient to enable the Commissioner to determine their correct tax liability.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  In addition, the taxpayer bears the burden of substantiating the amount and purpose of the item for the claimed deduction.  See Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).

A.    State Income Taxes

Section 164(a)(3) provides that State income taxes are allowed as a deduction for the taxable year within which they are paid or accrued.  Petitioner asserts that she is entitled to a State income tax deduction of $49,284.  On her return, petitioner reported that of the claimed deduction, $40,279 was for State income taxes overpaid and carried over from 2010.  Petitioner testified that she had consistently elected to carry forward overpayments of her State tax liability from year to year.  We are unable to determine how petitioner arrived at the $49,284 deduction she claimed on her return.

The evidence petitioner submitted at trial to substantiate her claimed deduction included copies of her 2006 through 2012 Federal income tax returns;

**[*7]** copies of her 2006 through 2012 State income tax returns;[6] a Form 1099-G, Certain Government Payments, recognizing a refund issued to petitioner in 2011 relating to tax year 2007; and several canceled checks issued to the California Franchise Tax Board.

Following trial petitioner submitted a 95-page opening brief and included an additional 3-page "Motion to Augment Record" at the end of the brief. Attached to the motion were California Franchise Tax Board account transcripts for the years 2006 through 2012; a State tax refund check issued to petitioner in 2014 for tax year 2011; two Forms 1099-G recognizing refunds issued to petitioner in 2014 relating to tax years 2010 and 2011; and a Form 1099-INT, Interest Income, recognizing interest paid to petitioner in 2014. On brief respondent objects to this motion on the grounds that the record was closed at the conclusion of trial and that no new evidence should be entertained by the Court.[7] In determining whether petitioner has substantiated her claimed deduction we must first consider whether to grant or deny petitioner's motion to reopen the record.

---

[6] Much as she did with her Federal income tax returns, petitioner demonstrated a pattern of filing her State returns late. Petitioner's 2010 State income tax return was signed on April 10, 2014, and her 2011 State income tax return was signed on May 25, 2014.

[7] We note that respondent did not file a motion to strike under Rule 143.

**[*8]**   Reopening the record for the submission of additional evidence lies within the discretion of the Court.  Butler v. Commissioner, 114 T.C. 276, 286-287 (2000) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971)).  The policy of the Court is to try all of the issues raised in a case in one proceeding to avoid piecemeal and protracted litigation.  Markwardt v. Commissioner, 64 T.C. 989, 998 (1975).  A court generally will not grant a motion to reopen the record unless, among other requirements, the evidence relied on (1) is material to the issue for decision and (2) probably would change the outcome of the case.  Butler v. Commissioner, 114 T.C. at 287.

The evidence petitioner seeks to introduce in her motion does not help her case.  Petitioner does not reasonably articulate in her briefs or in her motion how the figures in the account transcripts she seeks to have admitted add up to her alleged State income tax deduction.  We have reviewed the transcripts and are unable to reconcile them with petitioner's alleged deductions or amounts reported on her State income tax returns.  Furthermore, petitioner admits that the 2010 and 2011 figures in her account transcripts are subject to penalties which are still in dispute with the State Franchise Tax Board; this dispute makes the figures in the transcripts unreliable.

**[\*9]**  Five months before trial the parties received a pretrial order which stated:

> [A]ny documents or materials which a party expects to use (except solely for impeachment) if the case is tried, but which are not stipulated, shall be identified in writing and exchanged by the parties at least 14 days before the first day of the trial session.  The Court may refuse to receive in evidence any document or material that is not so stipulated or exchanged, unless the parties have agreed otherwise or the Court so allows for good cause shown.

We believe this order provided adequate notice to petitioner that she should have timely produced to respondent any documents she intended to use in her case, including the documents at issue.  Petitioner asserts that the documents were "newly discovered and arrived after the trial date."  While we are cognizant that petitioner may have been unable to produce the documents at issue because of her pattern of filing State and Federal returns late, we do not believe that her pattern of late filing amounts to good cause shown for admission of evidence after the record has closed.[8]

Additionally, because petitioner did not adequately show how the documents she seeks to have submitted into the record substantiate her alleged

---

[8] Petitioner's 2010 and 2011 State income tax returns are dated shortly after her petition was filed with the Court but over six months before the deadline to exchange documents in the pretrial order.  Her petition was filed February 4, 2014, and her 2010 and 2011 State income tax returns are respectively dated April 10 and May 25, 2014.  The deadline to exchange documents in the pretrial order was set to 14 days before the trial date of January 5, 2015.  We believe six months was sufficient for petitioner to produce the documents before trial.

[*10] deduction, we find that the documents attached to the motion are not material and would not change the outcome of the case.  Accordingly, we will deny petitioner's motion to augment and find that she failed to substantiate overpaid State income tax liabilities for prior years carried forward to 2011.  We do find, however, that petitioner substantiated, through bank statements and canceled checks, four estimated tax payments she made to the California Franchise Tax Board during 2011 totaling $13,000.  Accordingly, we hold that petitioner is entitled to a $13,000 deduction for State income taxes paid, but she is not entitled to deduct alleged overpayments she claims she made for prior years that have been carried forward to 2011.

### B.    Charitable Contributions

The final issue involves petitioner's noncash charitable contributions.  In general, a taxpayer is entitled to deduct charitable contributions made during the taxable year to or for the use of certain types of organizations.  Sec. 170(a)(1), (c).  A taxpayer is required to substantiate charitable contributions; records must be maintained.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  A gift of property must generally be substantiated by a receipt from the donee organization showing the donee's name, the date and location of the contribution, and a description of the property contributed.  Sec. 1.170A-13(b)(1), Income Tax Regs.  If it is

**[\*11]** impractical to obtain a receipt under the circumstances, the taxpayer must maintain reliable written records with respect to each item of donated property. Id.

Contributions of property of $250 or more generally require the donor to obtain a contemporaneous written acknowledgment of the donation from the donee. Sec. 170(f)(8)(A); Villareale v. Commissioner, T.C. Memo. 2013-74. A taxpayer who makes separate contributions of less than $250 to a donee organization during a taxable year is not required to obtain contemporaneous written acknowledgments even if the sum of the contributions is $250 or more. Sec. 1.170A-13(f)(1), Income Tax Regs.

We first address the adequacy of petitioner's records. Petitioner attached several Forms 8283, Noncash Charitable Contributions, to her return claiming a total of $4,638 in noncash charitable contributions. The amounts of the noncash charitable contributions are attributable to postcards, food, and various items of personal property petitioner donated to nonprofit organizations.

In support of her noncash contributions, petitioner introduced substantial written records cataloging her donations. Petitioner's records were supported by letters written from members of the donee organizations verifying the donations.[9]

---

[9] Many of the letters are dated 2014 and were therefore not issued contemporaneously with the donations made in 2011.

**[\*12]** Petitioner's handwritten records itemize each donee organization, the dates of the contributions, the number of postcards contributed, and the amount of food and other items of personal property contributed. We therefore find that petitioner's records regarding her noncash contributions, which were corroborated by letters from the donee organizations, are sufficient and reliable for purposes of section 170 and section 1.170A-13(b)(1), Income Tax Regs.[10]

Next we address whether petitioner properly valued her noncash contributions. We address first petitioner's postcard valuations and then her valuations of the remaining noncash contributions.

When a contribution is property other than money, the amount of the contribution is generally based on the property's fair market value at the time of the contribution. Sec. 1.170A-1(c)(1), Income Tax Regs. However, if the contributed property would produce ordinary income to the donor if sold at its fair market value, then the amount allowed as a deduction is limited to the donor's cost or basis in the contributed property. Sec. 170(e)(1)(A); Chronicle Publ'g Co. v. Commissioner, 97 T.C. 445, 447-448 (1991). Such ordinary income property includes artwork created by the donor and property held by the donor primarily for

_____

[10] Because no single contribution exceeded $250, the stricter substantiation requirement under sec. 1.170A-13(f)(1), Income Tax Regs., for a contemporaneous acknowledgment by the donee organizations is not applicable.

[*13] sale to customers in the ordinary course of the donor's trade or business. Sec. 1.170A-4(b)(1), Income Tax Regs.

At trial petitioner testified that she was an artist and that she frequently contributed postcards of her own creation to non-profit organizations. She arbitrarily assigned the postcards a "thrift shop value" of $1 and accordingly claimed a deduction of $1 per postcard contributed. Petitioner did not otherwise provide a fair market value for the postcards but testified that she believed some of the organizations sold the postcards for $1.50 or $2 per card. Petitioner introduced several samples of the postcards, and they all include her printed name on the reverse side with a copyright symbol.

Considering that petitioner is an artist, that she created the postcards, and that she included her printed name on the reverse side with a copyright symbol, we believe that the postcards are similar to inventory and therefore ordinary income property limited to a cost or basis deduction. See sec. 170(e)(1)(A). Unfortunately for petitioner, we are unable to determine from the record her cost or basis in the postcards. Despite being given the opportunity at trial to provide such information, petitioner did not provide any relevant testimony or other evidence on this issue. Accordingly, petitioner is not entitled to deductions for her postcard contributions.

**[*14]** With regard to the contributions of other personal property and food, petitioner's records are sufficient in substantiating a portion of her claimed contributions, and we accept the estimated fair market values she provides. After cross-referencing petitioner's records to the 2011 return she submitted to Appeals, we hold that petitioner is entitled to deductions for the following: (1) $50 for the donation of an ink cartridge; (2) $120 for the donation of 10 DVDs; (3) $28 for the donation of clothing; (3) $450 for the donations of food; (4) $140 for the donation of plants and flowers; and (5) $20 for the donation of song sheets.

In reaching our holding, we have considered all arguments made, and to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order will be issued, and decision will be entered under Rule 155.